### RICE et v
### CLEVELAND LADIES AID SOCIETY

Municipal Court of Cleveland

Morris I. Goldsmith, Cleveland, for plaintiffs.

A. I. Hausman, Cleveland, for defendant.

### OPINION

By ARTL, J.

This is an action by the plaintiffs to recover from the defendant society the sum of $150.00 as a death benefit claimed by plaintiffs as the result of the death of Zelda Rice. The facts are substantially as follows:

Zelda Rice had been a member of the defendant society for about two years. The monthly dues payable by the members were fixed at 25c per month and upon the death of a member in good standing every member was obligated to contribute the sum of $1.00 as an assessment to meet the death benefit of $150.00 payable by the defendant society. This assessment, or endowment as it was referred to by the members of the defendant society was payable within 60 days after notice to such member of the death of a member in good standing.

The proof offered in this case indicates that during the year 1935 the defendant society had three deaths, the last of which occurred on or about October 11, 1935, and that due notice thereof had been issued to and received by Zelda Rice.

It is further evident from the proof that Zelda Rice had paid her dues during 1935 and that she had paid two of the three death assessments, and that in addition her monthly dues for January and February, 1936, were likewise paid.

On April 10, 1936, at a regular meeting of the defendant society, Zelda Rice had been reported ill by a member of the sick committee of the defendant society and a record thereof spread upon the minutes of the meeting. Subsequently, on or about the 18th day of April, 1936, the said Zelda Rice, through a sister member of the defendant society, paid her dues for the months of March, April, May and June, 1936, and the amount due for the death assessment called in October, 1935. The amount paid was $2.00 and reached the financial secretary of the defendant society, was entered upon the records thereof and receipted for upon the receipt book of the member. At the time of the receipt of the payment the financial secretary stated to the person paying said money for the deceased that this would not put her in good standing because of her illness.

Zelda Rice died on or about May 10, 1936, and as the result thereof plaintiffs claim that deceased was a member in good standing at the time of her death and that there is due them the sum of $150.00 from the defendant. The defendant society contends that since the deceased was in arrears at the time of the report of her illness on April 10, 1936, she was not a member in good standing and she could not by the subsequent payment of her debt to the organization, before recovering from said ill-

ness, establish herself as a member in good standing so as to be eligible to receive benefits from the society.

This question necessarily involves the study and construction of the constitution and the by-laws of the defendant society. These were published in printed form in the Yiddish language only and for the purpose of trial counsel, by stipulation agreed that a translation thereof, received in evidence as plaintiff's exhibit "A", is a substantially correct translation of the constitution and by-laws except for one word found in Article IV, §1. Reference will be made to said word hereinafter.

The parts of the constitution pertinent to the determination of this case are as follows:

"Article IV, §1. A member must paid her "schulden" the first meeting in the third month, otherwise she is in arrears.

"Section 2.—In case of illness, a member in good standing is entitled to four weeks sick benefit, at $4.00 a week. The first week shall not be counted. In other words, the benefit starts as of the 2nd week the member reported herself sick.

"Section 3.—In case of sickness, a member cannot make herself good standing in the books. In such case the member is not entitled to any benefit. Also, a new member before six months is not entitled to any benefit except a plant. Each member is entitled to 1 plant each year in case of sickness.

"Section 5.—When a sister becomes sick, she must immediately report it to the finance secretary or to the president. The sister is duty bound to report the time when she recovers, and everything must correspond with the doctor's certificate. If not, it must be determined by the report of the floor committee. It is also demanded a doctor's certificate if a sister wishes to be paid for her sick benefit.'

"Article V, §1.—When a sister dies, and she was in good standing on the books, she is entitled to a carriage of a committee of officers and likewise also the sister's husband or her children are entitled to an endowment which amounts to 50c per member. The same endowment shall be paid to the sister if her husband dies."

The principal difficulty centers around the meaning of the word "schulden" as used in §1, Article IV, above. Plaintiff contends that the proper translation of the word into the English language is "dues." If that be true, then plaintiff's contention

that the deceased member was in good standing at the time of her death is conceded. The defendant contends that the word "schulden" has the broader meaning and is properly translated to mean "debts" or "obligations." If that be correct, it would follow that the deceased, having failed to pay the last death assessment within sixty days after its call, was in arrears within the meaning of the constitution at the time of the paying of her obligations on April 18, 1936, and being in ill health she could not by the payment so made, before a recovery of her health, reestablish her good standing in the organization.

The testimony of the witnesses as to the meaning of the word "schulden" is in direct conflict and not very helpful. Counsel referred the court to authoritative works of Yiddish-English and English-Yiddish translations. In the examination of the English-Yiddish Dictionary by Abelson, at page 412, we find the word "dues" defined as "schulden"—"obligation." At page 334 of the same work we find the word "debt" defined as "schulden." In the Yiddish-English Hebrew Dictionary by Harkary, at page 491, we find "schulden" defined as a "debt" or "debts."

Apparently the authoritative works on the subject are not entirely clear and indicate that the word "schulden" might interchangeably be used to denote "dues," "debt," "obligations."

We must, therefore, look to the intention of the society as manifested by the context of the entire constitution and there endeavor to find the solution to the problem. From a study of the constitution and the evidence, we find that the defendant is a society organized for the purpose of providing its members with benefits in case of illness and in case of death. Its principal revenue for these benefits comes in the way of dues and assessments upon living members in case of death of a member. The dues are fixed at 25c per month, payable monthly. Assessments, as pointed out above, are payable on call.

Apparently the society depends upon the monthly dues collected for the payment of sick benefits and its general operating expenses. Funds payable as death benefits are provided by the assessments. It is, therefore, at once apparent that the prompt payment of their obligations by its members is not only necessary but imperative that the society may in an orderly and prompt fashion meet its obligations to its sick or deceased members. When a society such as this enjoys a favorable reputation

in this respect, it may reasonably expect to build a stronger, larger organization and better promote the welfare of its members. No doubt this was in the minds of the members when adopting the constitution and by-laws.

Further analysis of plaintiff's contention that the word "schulden" was intended to mean only the regular monthly "dues" will indicate the unsoundness of that interpretation. Under plaintiff's theory, if a member did not pay the 25c monthly dues on or before the first meeting date of the third month, such member would be "in arrears" and not in good standing, although owing the society the sum of 50c. But on the other hand, if the society were unfortunate enough to lose twelve of its members during a given year, according to plaintiff's theory the failure to pay the prescribed assessments within the required time, even though it meant an obligation to the society of $12.00, would not affect the good standing of the member. It is at once evident that this interpretation is unreasonable and unsound. The court is, therefore, of the opinion that the word "schulden," as used in its constitution and by-laws, was intended to mean not only the monthly dues but rather any and all legitimate obligations due the defendant society by its members and that the deceased was in arrears and not in good standing at the time she became ill, as contemplated by said constitution and by-laws.

Having found that Zelda Rice was in arrears and not in good standing at the time she became ill, the payment of her obligations to the defendant society thereafter raises two interesting questions, to-wit: Does such payment of dues alone under such circumstances establish a member's good standing, and (2) did the society waive its right to claim forfeiture by acceptance of the member's dues?

A close scrutiny of the by-laws reveals that they are not free of ambiguity. §1, Article IV, is a general rule as to when obligations from members must be paid to avoid being in arrears and preserve the good standing of the members.

Section 3, Article IV, declares that "in case of sickness, a member cannot make herself good standing in the books. In such case the member is not entitled to any benefit." The balance of that section has no bearing upon the issues of this case.

The defendant society urges that the language of §3, Article IV, controls the present situation and that the plaintiff cannot recover. Plaintiff contends said §3 is limited in its application to sick benefits alone. A study of the pertinent sections of the by-laws discloses that the sick benefit payable to a member is $4.00 per week for a period of four weeks. A death benefit payable to a member in good standing is fixed at $150.00. Nowhere else in the by-laws do we find any other rule relating to the situation when a member is not in good standing. Does it seem reasonable that the society intended that a person once in arrears and while so falls ill could not reestablish during such illness her good standing so as to collect possibly $16.00 and leave the same question open as to death benefits which might amount to ten times as much? This seems hardly tenable. The court believes that the first two sentences of §3 must be read together with §1 of the same article.

The court believes that the society probably intended and that it means the following: "A member must pay her obligations the first meeting on the third month, otherwise she is in arrears and if she becomes ill while in arrears, a member cannot reestablish her good standing during such illness with the result that she cannot claim any benefit—sick or death." This appears to the court to be the more reasonable view of the situation and, therefore, holds that §3 above applies to death benefits as well as sick benefits.

Since the court has found that §3 applies to death benefits and the deceased having been ill and not in good standing when her dues were paid, does the acceptance of such money constitute a waiver of the right to claim a forfeiture? A further resort to the by-laws must be had to answer the question. What must a member do, who is in arrears and becomes ill, to reestablish her good standing?

In Article IV, §5, we find first that a member must immediately report her sickness to the finance secretary or to the president. In the following sentence we find the "The sister is duty bound to report the time when she recovers, and everything must correspond with the doctor's certificate. If not, it must be determined by the report of the floor committee." It is apparent, though not very clearly, that recovery of an ill member was a fact to be established by a doctor's certificate, and if any further discrepancies appeared, a committee of the society had a discretionary power to determine whether such member had really recovered. There is no claim here that any such procedure to establish

recovery of deceased was attempted in this case.

Plaintiff contends that the payment of her obligations and their acceptance by the financial secretary constitutes a waiver of the right to claim a forfeiture. In support thereof, counsel cites the court to the case of **Phoenix Council v Bennett**, 9 C.C. (N.S.) 195. That case is clearly distinguishable from the instant case in at least three important particulars,—that at the time the member became ill his dues were paid up and that he was in good standing and the society continued to accept his dues in lump payment from time to time rather than the weekly installments as contracted for; that the ill member therein had been paying his dues for a considerable length of time after becoming ill, which is pointed out in the opinion of the court.

In the instant case (1) Zelda Rice was not in good standing when she became ill; (2) the rules of the society specifically state that under such circumstances she could not reestablish her good standing while ill; (3) the officer receiving the funds advised the agent of Zelda Rice that payment of dues at this time would not put her in good standing.

Plaintiff further cites the court to the case of **Shields v Supreme Council, 123 Oh St 31.** The third syllabus of that case lays down the following rule of law:

"Where the insurer's conduct has been such as to affirmatively induce the belief that the forfeiture is waived, a waiver exists. A fraternal benefit society cannot exempt itself in advance by its by-laws from the effect of such waiver."

In the Shields case the insurer, after default in the payment of an assessment, notified Mrs. Blonding that the payment had been missed and directed her to take care of the matter promptly with no warning of the need of instituting reinstatement proceedings. There we have conduct that affirmatively induced the belief that the forfeiture was waived, it amounting to an unconditional demand to pay.

In the case at bar no affirmative conduct by the defendant society has been shown which would induce the belief that the forfeiture is waived, since it must be borne in mind that the financial secretary advised the messenger of Zelda Rice, who brought the money to pay her obligations, that such payment would not in and of itself put her in good standing.

Zelda Rice did not at any time since she became ill recover from her illness. It cannot, therefore, be said that the conduct of the society, by the acceptance of her money, in any manner mislead her, or deprived her of an opportunity to reestablish herself in good standing, since by a positive rule of the society a recovery of good health was a condition precedent to such reestablishment and her illness was continuous.

Counsel for plaintiff raises the question as to the propriety of the society accepting the dues from a member when such member being in default cannot claim benefits. The answer to such a query is obvious. Members frequently become ill and recover their health. If such illness finds them in a situation where, because of a present default, they cannot avail themselves of present benefits, they may desire to avoid suspension and in anticipation of the recovery of health and a reestablishment of their good standing continue to pay the dues required. This is not an uncommon practice.

The court, therefore, is of the opinion that the defendant society did not waive its right to claim forfeiture of default of Zelda Rice. The finding accordingly will be for defendant.